UNITED STATES of America,
Plaintiff,

v.

COMMERCIAL BANK OF NORTH
AMERICA, Defendant.

United States District Court
S. D. New York.

Dec. 12, 1962.

See also 31 F.R.D. 133.

Vincent L. Broderick, U. S. Atty., for Southern Dist. of New York, for plaintiff; Anthony J. D'Auria, Asst. U. S. Atty., of counsel.

Cole, Friedman & Deitz, New York City, for defendant; James G. Starkey, New York City, of counsel.

TYLER, District Judge.

The government, suing to recover the balance of funds deposited by it in a special account with defendant bank, as depository, moves for summary judgment.

On or about June 30, 1959, the government, as purchaser, entered into a contract of manufacture with Ameco Electronic Corporation ("Ameco"), a New York corporation. The course of dealings between the parties under this contract is not disclosed by the record before this court, otherwise than in a statement, contained in the affidavit of counsel for the government, that "Ameco defaulted on the contract of manufacture with plaintiff and pursuant to its terms, said contract was terminated."

On September 1, 1961, two other contracts, related to the principal contract of manufacture, were entered into. This litigation is most directly concerned with these two contracts.

One of these contracts, a tri-partite agreement among the government, Ameco, and defendant, provided for the creation with defendant bank of a "Special Bank Account" for deposit by the gov-

ernment of funds which were, or were to become, "progress payments" by the government to Ameco as due under the contract of manufacture.[1]

The second contract entered into on September 1, 1961 was one between the government and Ameco. This contract constituted a revision of and substitute for that portion of the original contract of manufacture which dealt with "progress payments".

The government bases its claim to recover here primarily on that portion of the Special Bank Account contract which provides that:

> "After receipt by the Bank of written directions from the Contracting Officer * * * the Bank shall act thereon and shall be under no liability to any party hereto for any action taken in accordance with the said written directions."

■ Defendant does not deny that a demand procedurally satisfying the terms of this provision has been made by the government for return of the funds in the special account. Instead, it argues, first, that the government by contract has surrendered the right to unilaterally withdraw these funds. In so arguing, defendant relies on portions of both of the two contracts of September 1, 1961.

In particular, it cites a portion of the contract of manufacture, as modified, dealing with progress payments. This provides, in pertinent part, that "[e]xcept as hereinafter provided each withdrawal [from the special account] shall be made only by check of the Contractor [Ameco] countersigned on behalf of the government by the Contracting Officer * * *." (Article III(a)). It appears that the contract in fact contains no express exception, here relevant, to this requirement that withdrawals be made "only by check of the contractor". Fur-

thermore, the Special Bank Account contract itself referring to the principal contract, as modified, states that, "The Bank shall be bound by the provisions of said contract relating to the deposit and withdrawal of funds in the above Special Bank Account."

It should be noted that the last-cited excerpt from the Special Bank Account contract does not declare that the government is "bound" by the terms of the principal or manufacturing contract, as modified. Unless an undertaking on the part of the government to be bound by the principal contract could be implied, defendant here would have no contractual right to insist that the government abide by its convenant with Ameco, supposing there to be such, that all withdrawals from the special account be made jointly by Ameco and the government.

Accordingly, the contractual provisions cited by defendant in and of themselves do not derogate from the government's right, as against defendant, to withdraw these funds unilaterally.

■ But that does not end the matter. Defendant also urges that there is an inconsistency between the provisions (a) that all withdrawals must be made jointly, and (b) that, as argued here, the government may make unilateral withdrawals by appropriate written directions to defendant bank. Defendant suggests, as a resolution of this inconsistency, that the written directions contemplated extend only to a right of the government to stop payments in order to preserve the lien on this special account secured to it by the Special Bank Account contract.[2]

That the government's position with respect to these funds may be essentially that of a lienor is supported by the fact that both contracts of September 1, 1961, refer repeatedly to the deposits to be made by the government in the special account as themselves constituting "pay-

---

1. The account is entitled "Ameco Electronic Corporation, U. S. Department of the Army, Special Bank Account".

2. The contract provides (§ 1): "The Government shall have a lien upon the credit

balance in said account to secure the repayment or liquidation of all Progress Payments made to the Contractor, which lien shall be superior to any lien or claim of the Bank with respect to such account."

ments" to Ameco.[3] If some or all of the funds deposited in this account were "payments" to Ameco, this means, presumably, that they become the property of Ameco.[4] In that event, there may well be substance in defendant's argument that the "written directions" provision of the Special Bank Account contract did not contemplate, or authorize, unilateral withdrawals by the government.

I conclude, therefore, that there is a substantial uncertainty as to the scope and meaning of that clause of the Special Bank Account contract requiring defendant to act on "written directions" of the contracting officer. Since the resolution of such ambiguity depends on the intent of the contracting parties (Corbin on Contracts, § 543, p. 140), and since this intent is, at this point, an unresolved question of fact, the government is not entitled to summary judgment on the basis of the terms of the Special Bank Account contract. See, Empire Electronics Co., Inc. v. United States of America, 2 Cir., 311 F.2d 175.

The government, however, appears to advance another, more general argument in support of its position here. In its memorandum of law (p. 2) it asserts that; "Since the adverse claimants cannot be heard in this action,[5] and since defendant makes no claim to the fund, plaintiff is entitled to judgment in its favor."

I find this argument to lack merit. According to this reasoning, any individual is entitled to take possession of a *res* from the hands of a bailee, trustee, or other person in possession, simply by showing that either such claiming individual or someone, anyone, else, other than the person in possession, is ultimately entitled to the *res*.

The applicable rule, of course, is that one lawfully holding a *res* on behalf of another may assert against a third person the rights of the one on whose behalf he holds. Any other rule would be essentially impractical and unfair. If, as I have reasoned above may be the case, these funds in fact "belong to" Ameco[6], and if the defendant is not otherwise obligated, as by contract, to surrender them to the government, then defendant bank has the right, if not the obligation, to protect, by asserting the

---

3. E. g., principal contract modification, Article III: " * * * all Progress Payments and all other payments by the Government under the contract after the date of this modification shall be made by check payable to the contractor and be marked for deposit only in a Special Bank Account * * *. No part of the funds in the Special Bank Account shall be mingled with the *other funds of the Contractor * * *.*" (emphasis added). The Special Bank Account contract likewise, referring to the principal contract modification, recites that, "Said contract requires that certain amounts paid to the Contractor thereunder be deposited in a Special Bank Account * * *." ("Recitals" § (b)).

4. Where, as here, rights to enjoyment or possession of property are determined specifically and in detail by contract, the terms "owner" and "lienor" may be inadequate to describe the legal rights created. Article VI of the contract of manufacture, as modified, provides in some detail for the calculation of progress payments. This article envisages "advance payments", "payments", and "liq-

uidation" of payments; the term "withdrawal" does not appear. These terms are not defined with any precision in the contract. No effort has been made by the parties either to define them or to relate them to the history of the specific funds sought in this action. Nor have the circumstances underlying the September 1, 1961 agreements been explained in order to shed light on the purposes and intentions of the parties thereto.

5. At an earlier stage in this suit Judge Croake of this court denied defendant's motion to join Ameco, and a creditor of Ameco, one Needleman, as parties defendant, on the grounds that such "joinder" would in fact be interpleader, here barred by the principle of sovereign immunity.

6. The point made in footnote 4, supra, should be reiterated here. The government, as "lienor", may have the right to take possession of these funds, as security. But such right would depend on the terms of the lien itself, and the government has not proven such a specific and limited right here.

"title" of the putative rightful owner, Ameco.

The issues raised in this suit cannot be decided on the record before me. The government's motion for summary judgment must be denied.

SO ORDERED.